(169 App. Div. 363)

### EVANS v. TRIMBLE et al. (No. 164-83.)

(Supreme Court, Appellate Division, Third Department. September 15, 1915.)

WILLS ⚖289—VALIDITY—BURDEN OF PROOF.

 A will prepared by the husband of the testatrix, an attorney, when she was critically ill, by which he received the major portion of her estate because of the failure of the will to dispose of it, cannot be upheld, where the husband did not show that she understood the instrument's effect; it appearing that the will was made to increase the share of a nephew, and that instead it was decreased.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. ⚖289.]

Woodward, J., dissenting.

Appeal from Trial Term, Albany County.

Action by Charles P. Evans against Robert Trimble, individually and as executor of Elizabeth T. Evans, deceased, and others, to set aside the probate of a will. From a judgment for plaintiff, and an order entering it (88 Misc. Rep. 667, 152 N. Y. Supp. 333), defendants appeal. Reversed, and complaint dismissed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

R. H. Gillet, of Albany (P. C. Dugan, of Albany, of counsel), for appellants.

Willis E. Heaton, of Troy (Alvin E. Mambert, of Troy, of counsel), for respondent.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JOHN M. KELLOGG, J. The chief beneficiary prepared the will and caused its execution. The witnesses saw it signed, but the contents were not made known to them or to the testatrix at the time. No one but the husband knows whether or not she understood its contents and effect. He is a lawyer. June 17, 1910, she made her will, in which she only gave him the use of the house and furniture during his life, and at his death it went to her brothers and the descendants of a deceased brother. The real estate was worth about $2,350 and she had $5,000 cash in the bank. The principal part of the money came from her deceased brother; the real estate, from her mother. She was 58 years of age, and had been married to her husband for 10 years; part of the time they had lived separate from each other. She was taken suddenly sick, was in a great deal of pain, and was put under the effect of opiates. She had told one of the witnesses some time before that she desired to make some changes in her will, that her brother's son was not satisfied, that she had received a letter from him, and that she would fix it so that he would be satisfied. This is the only evidence, aside from the will itself, of any intent upon her part to change her will.

The will of March 19, 1912, now in question, directed the executor to sell the house and furniture, gives one-quarter of the proceeds to the husband, one-quarter to her brother James, one-quarter to her brother Robert, and one-eighth each to John and Sarah, the son and daughter of a deceased brother. By the first will her residuary estate was to go equally to her brothers and John and Sarah, and the children of her deceased brother William, after the payment of some small legacies. The brother Robert is made the executor of both wills. The principal difference between the first will and the second is that there is no residuary clause in the second will, and it expressly revokes the former will, and, there being no children, she dies intestate as to her personal property and under the law he takes it as surviving husband.

The circumstances require explanation. Clearly the second will is not as favorable to her nephew, for whom she claimed she was making the change, as the former will. If the second will had directly given the personal property to the husband, and there was a reasonable probability that she knew its contents, the situation might be different. The testatrix was in a critical condition and might easily have been imposed upon. The husband gets the personal property by a construction of law placed upon the second will, which the testatrix could not understand. If by it he intended to get the personal property, it called for an explanation to the testatrix, and he should satisfy the court that she knew the effect of the will. The will is the act of the husband, a lawyer, who has made himself the chief beneficiary of his wife, when the former will, and this will, so far as the language goes, indicates that she did not have that intention. If she intended to make him the chief beneficiary of the will, we would expect the will to say so, and would expect that he would be made the executor. We would not expect it to be done by indirection, and in a manner which only a lawyer could understand. If this will had been read

to the testatrix and the witnesses, they would not have been able to understand that by it the husband was getting substantially all of the personal property and was the chief beneficiary; they naturally would have understood that he was only benefited to the extent of a quarter interest in the real estate. Clearly, if she intended to give the money to her husband, she would not have framed the will in the manner in which it appears, and there would be no good reason why he should have it framed in that way. The circumstances of this will show clearly the wisdom of the rule that, when a lawyer writes himself as chief beneficiary in a will, he must establish that the will is not his will, but the will of the testator.

We conclude, therefore, that the paper of March 19, 1912, is not the will of the testatrix, but was an instrument which the husband imposed upon her, and which she did not understand. It was his will, and not her will. I favor a reversal of the judgment and order, upon the law and the facts, with costs, and a dismissal of the complaint, with costs.

The court disapproves of the fourth, fifth, and seventh findings of fact and the first and second conclusions of law, and finds that the will of June 17, 1910, was the last will and testament of the testatrix, and that the paper dated March 19, 1912, was not her last will and testament, and that the execution of said last paper was obtained by the husband, the party chiefly to be benefited thereby, by fraud practiced by him upon her and was not her free and voluntary act. All concur, except

WOODWARD, J. (dissenting). If section 2653a of the Code of Civil Procedure is to have any intelligent and practical operation, there can be no question that this action was properly brought after the adjudication of the Surrogate's Court, and the affirmance of the decree on the part of this court. 158 App. Div. 894, 142 N. Y. Supp. 1117. The purpose of the statute was to permit interested parties to have a new trial of the issues before a jury, and it was competent for the parties to waive a jury and permit the court to determine the facts.

The learned trial court, in an opinion, has reviewed the facts in this case, and we are persuaded that the appellant has failed to show a case demanding a reversal of the judgment. The will of 1910, previously admitted to probate, was revoked by the subsequent will of 1912, and no question is here presented that this latter will was executed with all of the formalities required by law. It is urged, however, that the fact that the will was drawn by the plaintiff, who appears to have been a lawyer, and that it results in some advantages to himself, brings it within the rule laid down in Matter of Will of Smith, 95 N. Y. 516, and calls upon the plaintiff to establish affirmatively that the will was not the result of fraud or undue influence. But the rule as recognized in the Matter of Will of Smith does not go to the extent urged by the defendant, for it was said that:

The "rule to which we have adverted seems, however, to be confined to cases of contracts or gifts inter vivos, and does not apply, in all its strictness, at least, to gifts by will. It has been held that the fact that the bene-

ficiary was the guardian, attorney, or trustee of the decedent does not alone create a presumption against a testamentary gift, or that it was procured by undue influence."

In the present case, while there is a suggestion that the plaintiff was a lawyer, it also appears that he was the husband of the testatrix, living with her at the time of the execution of the will. It appears likewise that he drew the will of 1910, and that he was beneficiary under that will, and that the testatrix had previous to the execution of; the will of 1912 invited two of her neighbors in to witness the execution of a will which was to change the former one. No evidence whatever appears in the case which could justify the conclusion that the testatrix was under any pressure at the time the will was executed, and unless this husband, acting to all appearances in a natural manner, is obliged to rebut a presumption of fraud from the mere fact that he was an attorney, there is no foundation for this appeal. We think there is no such burden imposed upon him by law; that fraud must be proved against him, before he can be deprived of his rights. The mere fact of a man being an attorney does not outlaw him; he may still become the beneficiary of his wife's will, or of her failure to dispose of all of her property by a will, and, while the court would not fail to look into suspicious circumstances, and perhaps to hold a lawyer to a higher accountability than a layman under the same circumstances, we think in the case at bar the court has properly considered the facts, and that the conclusion is one justified by the record.

The opinion of the trial court makes it unnecessary to go further into the details of this case.

The judgment should be affirmed, with costs.