(173 App. Div. 256)

## In re GOODHART.

(Supreme Court, Appellate Division, Second Department.   June 2, 1916.)

WILLS ☞166(1)—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.

In an application to probate a will, evidence that testatrix was a confirmed victim of alcoholism, that the attorney to whom she left a specific bequest had for years cared for her legal interests, and that the residuary legatee with whom testatrix roomed during her last years had been consistently and deliberately kind to her, *held* not sufficient to support a finding of undue influence in procuring the execution of such will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 421; Dec. Dig. ☞166(1).]

Jenks, P. J., and Putnam, J., dissenting.

Appeal from Surrogate's Court, Kings County.

Petition by William A. Goodhart to admit to probate the last will and testament of Josephine A. Maxwell.  From a decree of the Surrogate's Court, denying admission to probate, and from an order denying a new trial, Emma F. Boltz, residuary legatee, appeals.  Reversed, with directions to admit such will to probate.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

Edward G. Nelson, of Brooklyn, for appellant.

Abraham Kaplan, of New York City (Maurice A. Pompan, of New York City, on the brief), for respondent.


CARR, J.  This is an appeal from a decree of the Surrogate's Court, in Kings county, refusing probate to an instrument as the last will and testament of Josephine A. Maxwell, deceased.  There is really nothing involved on this appeal but a question of fact; rather, were there facts enough to raise an issuable question for the jury, I suppose that may be termed more properly a question of law resting upon an examination of the facts in evidence.  The will of the decedent, after making a few minor bequests, bequeathed the sum of $1,000 to one William A. Goodhart, an attorney who drew the will, and the residue of the estate to a Mrs. Boltz.  Neither of these legatees was of the blood of the decedent.  She was an unmarried woman.  Her only or nearest relatives were nephews and nieces, children of a deceased or long missing brother, presumably deceased.  Her near relatives filed objections to the probate of the alleged will; the chief grounds alleged being lack of testamentary capacity on the part of the testatrix, and that the will was procured by "undue influence."  These two questions were submitted to the jury in the Surrogate's Court, under a charge of unusual lucidity and legal correctness.  The jury found that the alleged testatrix possessed testamentary capacity, but that her will was the result of "undue influence" on the part of some person or persons unspecified.  The executor and legatee, Goodhart, has not appealed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The residuary legatee, Boltz, contends that there was no proof of "undue influence" on her part, and that, though there was such proof as to Goodhart, the will should not have been rejected in toto, but only as to Goodhart, in which event she would take, as residuary legatee, the apparent bequest to Goodhart. She contends, further, that there was not sufficient proof to make an issuable question for the jury as to "undue influence" on the part of anybody. While the jury found against the contestants on the question of the lack of testamentary capacity, we may and should consider the evidence on that question, so far as it may be illustrative or material on the question of the mental condition of a decedent, who was said to have been "unduly influenced" in the making of a will. The evidence in the case is that this unfortunate woman· was a chronic alcoholic. She had been restrained several times of her liberty on that account. She had a small estate, consisting entirely of the income on a few thousand dollars held in trust, with the right of making a testamentary disposition of the principal. The income was meager, and her last days were distressing, even from a financial viewpoint alone. She had little money to clothe and feed herself properly. She took a "furnished room" with the appellant, Boltz. The latter was kind to her, let us grant from selfish motives. At least she recognized the decedent as a human being, in need of kindness and apparent sympathy. I can see nothing in the record that would suggest that some testamentary recognition of Mrs. Boltz by the decedent would have been startling in any way. The legacy to Goodhart required explanation, as he was the decedent's attorney and the draftsman of the will. I think the explanation given was fully adequate. He had been her attorney for years; it was through his professional activities that the decedent's estate had been procured through the adjustment of a legal controversy. He had exercised an interest in her welfare until the time of her death. As to Mrs. Boltz, the residuary legatee, there is, in my opinion, no evidence whatever of "undue influence." Doubtless, when she discovered that the decedent had a small estate, she was consistently and deliberately kind to the decedent; but that is not forbidden by the law. The decedent, as a continuous alcoholic, was not attractive to her relatives, and naturally so; but the law does not give them absolutely, or even presumptively, a right to her estate against testamentary provisions to the contrary. The relations between uncles or aunts and nephews and nieces are very frequently lax or indifferent, and the testimony in this case shows that there was no particular intimacy between the decedent and the contestants.

I recommend that the decree of the Surrogate's Court of Kings County, and the order denying a motion for a new trial, be reversed, with costs, and that the will of the decedent be admitted to probate. Settle proposed order and findings before CARR, J.

THOMAS and RICH, JJ., concur. JENKS, P. J., and PUTNAM, · J., dissent.